UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

QUEBECOR WORLD (USA), INC.,

                              Plaintiff,

                                                                        DECISION AND ORDER

                                                                        06-CV-6002L

                      v.

HARSHA ASSOCIATES, L.L.C., et al.,

                              Defendants.
_____

Plaintiff, Quebecor World (USA) Inc. ("Quebecor"), brought this action against four defendants–Harsha Associates, L.L.C.; Harsha & Associates; Harpro, LLC d/b/a Harsha Productions ("Harpro"); and Mark Harsha, individually, ("Harsha")–alleging breach of contract and other claims under New York law. Jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332. Two of the four defendants, Harpro and Harsha, have moved to dismiss the complaint against them for lack of personal jurisdiction, or in the alternative, to transfer the case to the Western District of Oklahoma.

### BACKGROUND

Quebecor is a Delaware corporation with its principal place of business in Connecticut, and is engaged in the printing industry. Defendants are all citizens of Oklahoma, and at all relevant times have been engaged in the advertising business.

In October 2003, Harsha submitted to Quebecor an "Application for Credit" on behalf of Harsha & Associates, in apparent anticipation of a job order for Quebecor to produce weekly advertising inserts for an as-yet unspecified customer. *See* Dkt. #13-2. Harsha signed the application as "Member" of Harsha & Associates. At the bottom of the application was a guaranty stating, *inter alia*, that "the undersigned ... guaranty [sic] prompt payment when due of any and all indebtedness now due or which may hereafter become due from [Harsha & Associates] to [Quebecor] ...," and that "[t]his shall be a continuing guaranty and shall not be revocable," except as to transactions occurring after Quebecor's receipt of written notice from Harsha that he was revoking the guaranty as to future transactions. *Id.* at 4.

In December 2003, Quebecor and Harsha & Associates entered into a contract ("the printing contract"), a copy of which is attached to the amended complaint as Exhibit A, by which Quebecor agreed to print certain materials described in the contract as "IGA Phoenix Retail Inserts" or "the catalog." The printing contract was to run for three years, from January 2004 through December 2006. Dkt. #15-3 ¶ 2.

The contract also provided that if Harsha & Associates "discontinue[d]" publication of the catalog, meaning "a total, permanent cessation of publishing the catalog," Harsha & Associates would give Quebecor forty-five days' written notice. *Id.* ¶ 19. Harsha & Associates agreed that if it failed to give such notice, it would be liable to Quebecor for certain expenses such as down-time, work in progress, and work completed but not yet billed or paid for. *Id.* Harsha signed the contract on behalf of Harsha & Associates, listing his title as "member." *Id.* at 5.

Unlike the application for credit, the printing contract contains a forum-selection clause. It states in part that

> [s]uit to enforce this Agreement or any provision or portion thereof will be brought exclusively in the federal courts located in the State of New York ... . Each party to this Agreement irrevocably agrees that all claims in respect of such actions or proceedings may be heard and determined in such courts and irrevocably submits to the jurisdiction thereof. Each of the parties irrevocably waives, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to laying venue of any such dispute brought in such court or any defense of inconvenient forum in connection therewith.

Dkt. #15-3 at 5.

In June 2005, defendants notified Quebecor that they were terminating the printing contract. Specifically, on June 21, Harsha sent an email to Kent Aurand, a sales representative at Quebecor, stating that "due to competitive circumstances we are moving our weekly print job effective this week. Thank you for the services you have provided." Dkt. #13-5 at 2.

After the termination, Quebecor alleges that it has sent invoices to defendants for goods and services performed under the contract from March 29, 2005, to June 22, 2005, totalling $178,116.72, none of which have been paid. *See* Dkt. #15-5. Under the printing contract, payment is due within forty-five days from the date of each invoice. Dkt. #15-3 ¶ 5. Quebecor also alleges that it is owed another $79,289.60 for expenses incurred as a result of defendants' termination of the contract. *See* Dkt. #15-4.

Quebecor commenced this action on January 3, 2006, asserting a cause of action for breach of contract and related claims, and seeking damages totalling $257,406.32, plus costs and attorney's fees. All the defendants have been served by means of service on Harsha, both in his personal capacity and as authorized agent for the other three defendants. As stated, Harsha and Harpro have moved to dismiss for lack of personal jurisdiction, or to transfer venue. Harsha Associates, L.L.C. and Harsha & Associates have not appeared in the action and are in default.

**DISCUSSION**

**I. Personal Jurisdiction**

**A. Mark Harsha**

**1. Guaranty Provision**

Plaintiff contends that Harsha is subject to personal jurisdiction in this district by virtue of the guaranty that he signed in connection with Harsha & Associates' application for credit. Although neither the guaranty nor the application for credit contains a forum-selection clause, plaintiff maintains that "courts regularly exercise personal jurisdiction over guarantors where it is clear that the entity whose obligations were guaranteed is closely connected to the guarantor" and that entity is itself subject to the court's personal jurisdiction through a forum-selection clause. Plaintiff's Memorandum of Law (Dkt. #23) at 3.

A review of the case law, however, indicates that it is not quite that simple. Rather, where a guaranty does not contain a forum-selection clause, the question of whether the guarantor is subject to a forum-selection clause in the underlying contract depends on how closely related the contract and the guaranty are. Relevant factors include whether the two documents were executed contemporaneously, whether the guaranty is stated to have been an inducement or consideration for the contract or incorporates the contract by reference, and whether the two documents cover the identical subject matter.

For example, in *Lemme v. Wine of Japan Import, Inc.*, 631 F.Supp. 456 (E.D.N.Y. 1986), a New York wine distributor brought a diversity action against a New York wine importer and a Japanese corporation ("Konishi"), alleging that the importer had breached its contract with the

plaintiff and that Konishi had guaranteed the importer's performance under the contract. Konishi moved to dismiss for lack of personal jurisdiction.

The plaintiff argued that Konishi consented to jurisdiction in New York by signing the guaranty. The plaintiff's theory was that, because the underlying contract between the plaintiff and the importer contained a clause designating New York as the forum in which to litigate any disputes arising out of the performance of the contract, the guarantor was also bound to "perform" that term by submitting to jurisdiction in the chosen forum.

Addressing this argument, the court first recognized the general rule that "[w]here C guarantees that B will perform his contract with A, jurisdiction over B does not carry with it jurisdiction over C." *Id.* at 460. However, the court noted, the guaranty here stated that Konishi guaranteed the importer's "performance of *each and every term and condition* of [the underlying contract] *as if said obligations, representations, and warranties were of and made by it*, or the conditions and terms of said Agreement were to be *performed* and [sic] by it." *Id.* at 461 (emphasis added). The court stated that through this language, "Konishi undertook to guarantee more than simply the delivery of the products ordered by plaintiff; it adopted as its own each and every term and condition of the Agreement. This emphatic expression of intent to assume every obligation under the contract necessarily included the consent-to-jurisdiction clause." *Id.* The court added that "the guarantee virtually incorporates the contract by reference. In such a situation, the only reasonable interpretation is that the consent-to-jurisdiction clause was meant to bind both [the importer] and Konishi." *Id.*

In *Ameritrust Co. Nat'l Ass'n v. Chanslor*, 803 F.Supp. 893 (S.D.N.Y. 1992), the defendant, a citizen of New Mexico, as trustee, executed certain investor notes on behalf of a trust, as well as

a personal guaranty assuring the payments due from the trust under the terms of the notes. Each note contained a New York forum-selection clause.

Although the guaranty contained no forum-selection clause, the court denied the trustee's motion to dismiss for lack of personal jurisdiction. In so doing, the court noted that "[t]he Guarantee states that the guarantor unconditionally guarantees 'the full payment, performance and observation ... of all agreements ... of the Trust' executed in connection with the Notes [and certain related agreements]. Since one of the Trust's obligations under these agreement [sic] was its consent to New York jurisdiction, the Guarantor's unlimited assumption of the Trust's obligations assumes this consent as well." *Id.* at 895-96. The court also noted that "the documents were executed together," and said that they should therefore be interpreted the same way, especially since "the guarantee refers to the contract whose performance is guaranteed." *Id.* at 896 (citing *Liamuiga Tours v. Travel Impressions, Ltd.*, 617 F.Supp. 920 (E.D.N.Y. 1985) ("where two or more written instruments between the same parties concerning the same subject matter are contemporaneously executed, they will be read and interpreted together")). *See also Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*, 386 F.Supp.2d 421, 426 n. 7 (S.D.N.Y. 2005) (individual defendant consented to jurisdiction when he signed a guaranty agreement which incorporated and referred to promissory note containing forum-selection clause); *Days Inn of America, Inc. v. L.A., Inc.*, No. 97 Civ. 5476, 1998 WL 765182, at *4 (S.D.N.Y. Nov. 3, 1998) (where license agreement and guaranty concerned same subject matter, guaranty referred specifically to the performance of the agreement by an entity on whose behalf defendant signed as president, guaranty incorporated the entire agreement and contained no separate choice-of-law clause or other indication that the parties meant to distinguish the two agreements for purposes of forum-selection, and guaranty specifically recited that it was an

inducement to plaintiff to execute the agreement, "[t]he two agreements were plainly part of the same transaction," and therefore forum-selection clause in agreement consenting to personal jurisdiction and venue in the Southern District of New York applied to the guaranty as well); *Faberge USA, Inc. v. Ceramic Glaze, Inc.*, No. 87 CIV. 5780, 1988 WL 31853, at *3 (S.D.N.Y. Mar. 28, 1988) (guarantor of licensing agreement to which he was not a party was bound by forum-selection clause in licensing agreement, since "the [guarantee] does not stand alone. It is part and parcel of the licensing agreement. In fact, the guarantee not only specifically guarantees the full performance of all terms of the contract–forum selection not excluded–but also expressly states that the guarantee itself is an inducement–a condition–of the agreement's existence").[1]

Absent such a close connection between a guaranty and the underlying contract, however, courts in New York have been much more reluctant to bind a guarantor under a contract's forum-selection clause, particularly where the guaranty contains a choice-of-law (but not a choice-of-forum) clause. In *Days Inn*, for example, the court stated that "[i]f an underlying contract contains both consent-to-jurisdiction and choice-of-law clauses, a guaranty containing only the choice-of-law clause does not incorporate the contract's consent-to-jurisdiction clause." 1998 WL 765182, at *3. *See also Pal Pools, Inc. v. Billiot Bros., Inc.*, 57 A.D.2d 891, 891 (2d Dep't 1977) ("The guarantee of payment executed by the individual defendants, which is the basis of the second cause of action, contains a clause referring only to choice of law; it is not a consent to jurisdiction in New York"); *Lemme*, 631 F.Supp. at 461 (distinguishing *Pal Pools* on the ground that "[t]here, however, the

---

[1]Similarly, in *United Airlines, Inc. v. ALG, Inc.*, 873 F.Supp. 147, 151 (N.D.Ill. 1995), which plaintiff cites, the court held that a guarantor was subject to a forum-selection clause in the guaranteed lease, inasmuch as the guaranty agreement "clearly contemplated the later [lease] agreement since it refers to ALG as the lessor, identifies the exact aircraft to be leased, and specifies various terms of delivery and payment."

guaranty agreement contained only a choice of law provision. Thus, it was reasonable to conclude that the parties had carefully distinguished between the two documents, intending only that the guarantors be governed by the substantive law of New York, not that they be subject to its jurisdiction as well").

In the case at bar, the application for credit and guaranty signed by Harsha was executed about two months *prior* to the contract for the IGA Phoenix Retail Inserts. The credit application did state that it was for weekly inserts, but otherwise set forth no details of the subject matter or terms of the anticipated contract or the details of the printing job. Neither the credit application and guaranty nor the printing contract expressly refer to each other, nor is there any express statement in them that the guaranty was an inducement for Quebecor to enter into the contract. Significantly, the application for credit also contains a provision stating that it shall be governed by New York law, *see* Dkt. #13-2 ¶ 10, but no forum-selection clause. In addition, the printing contract states that it "is intended as the complete and exclusive statement of the terms of [the parties'] agreement." Dkt. #15-3 ¶ 26.

Under these circumstances, I do not believe that the forum-selection clause contained in the printing contract should be deemed to apply to Harsha by virtue of his having signed the earlier guaranty. Although there is obviously *some* connection between the application for credit/guaranty and the subsequent printing contract, they are not so closely related that they should be read as essentially one document. *See Bank of Tokyo-Mitsubishi, Ltd., New York Branch v. Kvaerner*, 243 A.D.2d 1, 6 (1st Dep't 1998) (a "guaranty is not read together with the contract it indemnifies, 'unless the history and subject matter shows them to be unified'") (quoting *Ripley v. International Rys. of Central America*, 8 N.Y.2d 430, 438 (1960)). Plaintiff "could easily have included a consent

to jurisdiction provision in the guaranty, but did not do so," *Ramada Franchise Systems, Inc. v. Cusack Dev., Inc.,* No. 96 Civ. 8085, 1997 WL 304885, at *1 (S.D.N.Y. June 6, 1997), and accordingly the guaranty does not furnish a basis for subjecting Harsha to personal jurisdiction in New York.

**2. "Nonexistent Entity"**

Plaintiff next argues that Harsha is subject to personal jurisdiction in this district because he signed the printing contract on behalf of a nonexistent entity, Harsha & Associates. Plaintiff contends that Harsha & Associates was never a recognized legal entity. Harsha Associates, L.L.C. was registered with the Oklahoma Secretary of State, *see* Dkt. #12-3, but Harsha & Associates (without the "L.L.C."), on whose behalf Harsha purportedly signed the contract, was not.

In support of its position, Quebecor relies upon New York case law to the effect that "[w]hen individuals purporting to act on behalf of a nonexistent principal enter into a contract with a third party, ... the contract generally remains valid and enforceable as between the third party and the individuals who executed the contract on behalf of the nonexistent principal." *Metro Kitchenworks Sales, LLC v. Continental Cabinets, LLC*, 31 A.D.3d 722, 723 (2d Dep't 2006); *accord Grutman v. Katz*, 202 A.D.2d 293 (1st Dep't 1994).

There is also authority, however, that "[t]he use of a trade name, similar to [a business entity's] legal name, will not replace corporate liability with personal liability on behalf of officers and directors." *Walker v. Smith*, 257 F.Supp.2d 691, 698 (S.D.N.Y. 2003). Rather, the general rule is that "[w]here there is a misnomer of the corporation in the contract or obligation sued on, the corporation may sue or be sued, and recovery may be had by or against it, in its true and proper

corporate name." *Id.* (quoting 19 C.J.S. *Corporations* § 711 (West 2002)); *see also Spanierman Gallery, P.S.P. v. Love*, 320 F.Supp.2d 108, 111 (S.D.N.Y. 2004) ("Under New York law, a contract entered into by a corporation under a 'colloquial title' is enforceable by either party, and 'the misnomer is held unimportant'") (quoting *Mail & Express Co. v. Parker Axles, Inc.*, 204 A.D. 327 (1st Dep't 1923)); *Humble Oil Refining Co. v. Jaybert Esso Service Station, Inc.*, 30 A.D.2d 952, 952 (1st Dep't 1968) ("The misnomer of the principal obligor in the contract does not affect the validity of the obligation").  Accordingly, absent an allegation that, at the time of the contract, a plaintiff was under an actual misapprehension that there was some other, unincorporated group with virtually the same name as that of the actual business entity, "the Court will not permit the Plaintiff[] to capitalize on [a] technical naming error in contravention of the parties' evident intentions." *Spanierman Gallery*, 320 F.Supp.2d at 112 (individual defendant's signature on behalf of "R.H. Love Galleries," as distinguished from defendant "R.H. Galleries, *Inc.*," did not subject him to personal liability for signature purportedly on behalf of fictitious entity). *See also Walker*, 257 F.Supp.2d at 697-98 (where corporation, at the time that it issued notes, was registered with California Secretary of State as "FaceCake.com, Inc.," but notes were issued on behalf of "FaceCake Marketing Technologies, Inc.," corporate officers were not subject to personal liability on notes, since at the time the notes were issued, the corporation was known to the public primarily as FaceCake Marketing Technologies, Inc.); *Humble Oil*, 30 A.D.2d at 952 (misnomer immaterial where "[t]here was only one such corporation and the error in the name as inserted in the contract was not misleading"). The rule is a longstanding one in New York. *See Boisgerard v. New York Banking Co.*, 2 Sand Ch. 23 (1844) ("There is no doubt of the association described in this contract, and the misnomer therefore does not vitiate the transaction").

Although Quebecor repeatedly argues that defendants have failed to show that Harsha & Associates is the same entity as Harsha Associates, L.L.C., the fact remains that neither the complaint nor plaintiff's other submissions contain any indication that Quebecor was misled about the identity of the other party to the printing contract, or that the parties did not share a mutual understanding in that respect. I therefore see no basis for subjecting Harsha to personal liability based on the slight variance between the name on the contract and that of the "real" entity.

Furthermore, the rationale behind the rule imposing personal liability on one who signs on behalf of a nonexistent corporation or other business entity is not applicable here. The rule seems designed to protect a party who enters into a contract where the other signatory represents that he is signing on behalf of a business entity that in fact does not exist, under *any* name. *See Animazing Entertainment, Inc. v. Louis Lofredo Assocs.*, 88 F.Supp.2d 265, 271 (S.D.N.Y. 2000) ("it would be inequitable to allow individuals who form contracts on behalf of nonexistent corporations to avoid liability because their misrepresentations resulted in a contractual defect"); *Wilhelm v. McAnn's W. 48th Street Restaurant Corp.*, No. 01 C 7518, 2004 WL 2658066, at *5 (N.D.Ill. Oct. 14, 2004) (recognizing that "'fraud and abuse would be encouraged if an officer of a dissolved corporation [was] allowed to conduct business in the corporate name' while shielding himself from personal liability with the veil of a non-existent corporation") (quoting *Annicet Assocs., Inc. v. Rapid Access Consulting, Inc.*, 171 Misc.2d 861, 864 (Sup.Ct. Rockland County 1997)) (applying New York law); *see*, *e.g.*, *Bay Ridge Lumber Co., Inc. v. Groenendaal*, 175 A.D.2d 94, 96 (2d Dep't 1991) (since individual defendants were alleged to have acted on behalf of an apparently nonexistent corporation, "Adcon Corporation," they could be held personally liable for the obligations incurred in the name of "Adcon Corporation"); *Clinton Investors Co., II v. Watkins*, 146 A.D.2d 861, 862-63 (3d Dep't

1989) (treasurer of corporate lessee was personally liable where no corporation existed at the time treasurer signed lease, and where lessor did not know that it was contracting with an as yet nonexistent principal, but was led by treasurer to believe that the corporation was indeed in existence at the commencement of the lease term).

Conversely, where a corporation or other business entity does exist, it would be inequitable to allow *that* entity to avoid contractual liability simply because of a slight variance between the name on the contract and the entity's "actual" name. *See*, *e.g.*, *Walker*, 257 F.Supp.2d at 698 ("Where there is a misnomer of the corporation in the contract or obligation sued on, the corporation may sue or be sued, and recovery may be had by or against it, in its true and proper corporate name") (quoting 19 C.J.S. *Corporations* § 711 (West 2002)). Indeed, "[t]he United States Supreme Court has observed that 'a contract is not avoided by misnaming the corporation with which it is made.'" *Page v. United States*, 49 Fed.Cl. 521, 524 (2001) (quoting *County of Moultrie v. Fairfield*, 105 U.S. 370, 377 (1881)).

Rather, "as long as the identity of the corporation can be reasonably established from the evidence[,] ... [e]rror in the use of the corporate name will not be permitted to frustrate the intent which the name was meant to convey." *Page*, 49 Fed.Cl. at 524 (quoting 6 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 2444 (1996)). In such a situation, however, there is no need or basis to impose personal liability on the person who signed the contract as agent for the entity. Since the name on the printing contract, "Harsha & Associates," differs only slightly from "Harsha Associates, L.L.C.," and there are no allegations suggesting that Quebecor was misled about the identity of the party with whom it was dealing, I see no basis for imposing personal liability on Mark Harsha under this theory.

**3. Alter Ego**

Quebecor's third ground for imposing personal liability on Harsha is that Harsha Associates L.L.C. is Harsha's alter ego. "[U]nder New York law, where [a] corporation is essentially an alter ego of a family or individual, the [corporate] veil may be pierced" and the family or individual held personally liable for the corporation's obligations. *Statharos v. New York City Taxi and Limousine Commission*, 198 F.3d 317, 324 (2d Cir. 1999) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir.1991)). This doctrine applies to limited liability companies ("LLCs") as well. *See, e.g., Retropolis, Inc. v. 14th Street Development LLC*, 17 A.D.3d 209, 210 (1st Dep't 2005); *Williams Oil Co. v. Randy Luce E-Z Mart One*, 302 A.D.2d 736, 739-740 (3d Dep't 2003).

Establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a "less onerous standard" than that necessary for equity to pierce the corporate veil for liability purposes under New York law. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). The chief question is "whether the [LLC] is a real entity. If the [LLC] is merely a shell, it is equitable, even if the shell may not have been used to perpetrate a fraud, to subject its owner personally to the court's jurisdiction to defend the acts he has done on behalf of his shell." *Id.* at 903. "If personal jurisdiction exists over the dominating entity, then it exists over its corporate alter egos." *Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 WL 22832384, at *7 (S.D.N.Y. Nov. 25, 2003). Consequently, a "corporation's consent to jurisdiction under a forum selection clause can be applied to obtain jurisdiction over a [foreign defendant] by disregarding the corporate entity under the doctrine of piercing the corporate veil." *Packer v. TDI Systems, Inc.*, 959 F.Supp. 192, 201 (S.D.N.Y. 1997).

In this case, the amended complaint alleges virtually no facts which, if true, would warrant a finding that Harsha Associates, L.L.C. was Harsha's alter ego. The complaint simply alleges in conclusory form that "Mark Harsha is legally responsible for the obligations of one or more of the defendants," Amended Complaint ¶ 9, and repeats several variations of that allegation.

In opposition to defendants' motion, plaintiff also notes that Harsha was, by his own admission, the "single member and manager" of Harsha Associates, L.L.C., *see* Declaration of Mark Harsha (Dkt. #9) ¶ 1, and that he was the person who made the decision to terminate the printing contract. That in itself, of course, is not enough; if it were, it would defeat one of the beneficial purposes for forming an LLC, that is, to shield its individual members from personal liability for the acts of the LLC. *See* N.Y. L.L.C. L. § 609(a) (providing that "a member of a limited liability company ... is [not] liable for any debts, obligations or liabilities of the limited liability company ..., whether arising in tort, contract or otherwise, solely by reason of being such member ... or acting (or omitting to act) in such capacit[y] or participating ... in the conduct of the business of the limited liability company"). The conduct alleged fails to establish that Harsha Associates, L.L.C. was a mere "shell" for Harsha.

In its response to the motion to dismiss, plaintiff also alleges that following the termination of the printing contract, Harsha essentially dissolved Harsha Associates, L.L.C. and formed a new business under the name Harpro, LLC d/b/a Harsha Productions, which has continued doing business with IGA, the client for whom the inserts or catalogs were being printed by Quebecor under the printing contract. *See* Declaration of Kent Aurand (Dkt. #13-1) ¶ 14. Defendants admit that Harpro was formed in June 2005, and that it does business for IGA, but they contend that Harpro was formed by Harsha's wife, Kay Harsha, that Kay Harsha is its sole member and manager, and

that she used her own past contacts with IGA from her work with an unrelated advertising agency in the 1980s to secure IGA's business. *See* Declaration of Kay Harsha (Dkt. #17-2) ¶¶ 1, 2, 8.

Accepting the truth of plaintiff's allegations, Harpro may be liable on the printing contract under a theory of successor liability, a matter which is addressed below. Under the authorities previously cited, however, I am not convinced that this is enough to indicate that Mark Harsha used Harsha Associates, L.L.C. as a mere shell, thus subjecting him to personal liability under the printing contract.

Based on all of the above, the motion to dismiss is therefore granted in all respects as to Mark Harsha.

**B. Harpro**

Quebecor alleges that Harpro is subject to personal jurisdiction in New York as a successor to Harsha Associates, L.L.C. At least at this early stage of the proceedings, I agree that plaintiff has alleged sufficient facts to subject Harpro to personal jurisdiction here.

As this Court has stated in a factually similar case, "it is well established that a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses. An entity that is not a party to a contract containing a forum selection clause may therefore be bound by the clause if the entity is closely related to the dispute such that it becomes foreseeable that it will be bound." *International Private Satellite Partners, L.P. v. Lucky Cat Ltd.*, 975 F.Supp. 483, 485 (W.D.N.Y. 1997) (internal quotes and citations omitted).

In *Lucky Cat*, I held that this Court had personal jurisdiction over an England-based company, Swiftcall (Jersey), under a contractual forum-selection clause, even though Swiftcall

(Jersey) was not a signatory to the contract. Noting the plaintiff's allegation that Swiftcall (Jersey) had entered into the business of providing services similar to those previously performed by the signatory, Swiftcall Limited (which had ceased doing business at about the same time that Swiftcall (Jersey) began provided those services), I stated that I "[could ]not simply accept Swiftcall (Jersey)'s assertion that it did not assume any of Swiftcall Limited's contractual obligations," and that "[c]onstruing the pleadings and affidavits in plaintiff's favor, I conclude that there is a basis upon which it could be found that it was foreseeable to Swiftcall (Jersey) that by engaging in its transaction with Swiftcall Limited and thereafter performing the same services as Swiftcall Limited, Swiftcall (Jersey) might be closely enough related to disputes arising out of Swiftcall Limited's contracts to bind Swiftcall (Jersey) under the forum selection clause." *Id.* at 486 (citation omitted).

The same holds true here. Although defendants contend that Harpro did not purchase any of Harsha Associates, L.L.C.'s assets, and did not assume any of its liabilities, in deciding defendants' motion to dismiss I cannot simply accept those assertions at face value. Given the timing of the events here, the fact that the sole members of Harsha Associates, L.L.C. and Harpro are husband and wife, and defendants' admission that Harpro does business with IGA, I believe that plaintiff has made "legally sufficient allegations of jurisdiction" as to Harpro. *Id.* at 485.

In addition, I find that the allegations and evidence before me are sufficient at this stage to survive a motion to dismiss based on a theory of successor liability on the grounds that there was a *de facto* merger of Harsha Associates, L.L.C. and Harpro, or that Harpro is a mere continuation of Harsha Associates, L.L.C. *See id.* at 486-87 (discussing successor liability under those theories); *see also Schumacher v. Richards Shear Co., Inc.*, 59 N.Y.2d 239, 245 (1983) (corporation may be held liable for the torts of its predecessor if there was a consolidation or merger between the two,

or the newly created corporation is a mere continuation of the prior corporation). There does appear to be some evidence of continuity of ownership (or at least closely related ownership), a close temporal relationship between the cessation of Harsha Associates, L.L.C.'s business and Harpro's commencement of business, and continuity of the general business operation of the two entities. "Again, though [defendants] dispute[] some of these allegations, I must resolve any doubts on these matters in plaintiff's favor." *Lucky Cat*, 975 F.Supp. at 487.

## II. Transfer

In the event that the Court denies the motion to dismiss, defendants request in the alternative that the Court transfer this case to the Western District of Oklahoma pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Defendants' request is denied.

Even when enforceable, a forum-selection clause is not dispositive on a motion to transfer under § 1404(a)." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). "Even when such a clause is present," therefore, "the court must still 'take account of factors other than those that bear solely on the parties' private ordering of their affairs,' such as the convenience of the witnesses," the locus of the operative facts, and other relevant factors. *Mpower Communications Corp. v. Voipld.com, Inc.*, 304 F.Supp.2d 473, 475 (W.D.N.Y. 2004) (citing *Stewart Org.*, 487 U.S. at 30).

At the same time, however, "[t]he presence of a forum selection clause will ... typically be 'a significant factor that figures centrally in the district court's calculus' in the decision on whether to transfer venue." *Mpower*, 304 F.Supp.2d at 475 (quoting *Stewart Org.*, 487 U.S. at 29). The

general rule in this circuit is that "such clauses are not lightly disregarded," *Mpower*, 304 F.Supp.2d at 475, and that "once a mandatory choice of forum clause is deemed valid, the burden shifts to the [party seeking transfer] to demonstrate exceptional facts explaining why he should be relieved from his contractual duty."  *Weiss v. Columbia Pictures Television, Inc.*, 801 F.Supp. 1276, 1278 (S.D.N.Y. 1992); *accord Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp.2d 367, 395 (S.D.N.Y. 2006); *Hellex Car Rental Systems, Inc. v. Dollar Systems, Inc.*, No. CV-04-5580, 2005 WL 3021963, at *5 (E.D.N.Y. Nov. 9, 2005).

In support of their motion for transfer, defendants assert, in cursory fashion, that none of the underlying events, parties, witnesses, or evidence occurred in or are located in New York.  That is not enough.  Although Oklahoma does seem to have a more obvious connection to the facts giving rise to this case than does New York, such a broad, nonspecific assertion will not suffice to meet defendants' "'heavy burden of proof' to show that the 'serious inconvenience of the contractual forum' warrants setting aside the forum selection clause."  *Haskel v. FPR Registry, Inc.*, 862 F.Supp. 909, 917 (E.D.N.Y. 1994) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 17 (1972)).  *See also Matera v. Native Eyewear, Inc.*, 355 F.Supp.2d 680, 687 (E.D.N.Y. Feb. 10, 2005) ("The moving party must support its motion with an affidavit containing detailed factual statements explaining why the motion should be granted including, among other things, the location of events giving rise to the suit, convenience of the parties and witnesses, transferee forum is more convenient").  On the record before me, then, I conclude that transfer is not warranted at this time.

**CONCLUSION**

Defendants' motions to dismiss or in the alternative to transfer this action (Dkt. #10 and #17) are granted in part and denied in part. Defendants' motion is granted as to defendant Mark Harsha, and the complaint is dismissed as to him. In all other respects, defendants' motion is denied without prejudice.

Defendants' motion for a telephonic pre-argument conference (Dkt. #24) is denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 11, 2006